IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARRIE NELSON,

                     Plaintiff,

    v.                                                               OPINION and ORDER

ANDREW SAUL,                                                 19-cv-79-jdp
  Commissioner of the Social Security Administration,

                     Defendant.

---

Plaintiff Carrie Nelson seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of Social Security, finding her not disabled under the Social Security Act. She contends that the administrative law judge erred by discounting the opinion of Dr. Scott Warren, Nelson's treating physician, that Nelson could work only four hours per day, sit four hours at a time, and stand thirty minutes at a time. The court concludes that Nelson has not identified any reversible errors, so it will affirm the commissioner's decision.

ANALYSIS

Nelson seeks disability benefits for a period beginning April 1, 2012. In an October 31, 2017 decision, ALJ Virginia Kuhn found that Nelson suffered from several severe impairments, including the impairment at issue on this appeal, osteoarthritis of the knees. But she ultimately concluded that Nelson retained the residual functional capacity (RFC) to perform light work with some additional restrictions, such as "no climbing of ladders, ropes or scaffolds," only "occasional kneeling, stooping, and crouching," and "no tasks that would specifically require

the act of balancing." R. 25.[1] Relying on the testimony of a vocational expert, the ALJ found that Nelson could perform jobs as a small products assembler, an electrical accessories assembler, and a sub-assembler.

The only aspect of the ALJ's decision that Nelson challenges on appeal is her handling of a medical opinion from Dr. Scott Warren, one of Nelson's treating providers.[2] In a June 9, 2017 medical source statement, Warren noted that Nelson suffered from chronic pain and stiffness in both knees, as well as quadriceps muscle atrophy. R. 538. He rated Nelson's pain as moderate, and he opined that she could work 4 hours per day; stand up to 30 minutes at a time; sit up to 4 hours at a time; lift 20 pounds occasionally; lift 10 pounds frequently; occasionally bend, stoop, and climb stairs; and never balance or climb ladders. R. 539.

In her decision, the ALJ concluded that Warren's opinions regarding "lifting/carrying, no balancing, no climbing ladders, and occasional bending, stooping and climbing [were] consistent with the overall evidence." R. 33–34. So she incorporated those limitations into the RFC. But she declined to credit Warren's restrictions related to standing, sitting and working because she determined that (1) "no objective evidence or any medical basis [had been] cited on the form to support these limits"; and because (2) "the objective findings, examinations, observations by providers, course of treatment, response to treatment, medications, and overall functioning [did] not support the opined 4 hours a day or further limits in sitting or standing." R. 34.

---

[1] Record cites are to the administrative transcript, located at Dkt. 8.

[2] In her opening brief, Nelson also asserted that the ALJ had failed to explain how she factored Nelson's obesity into the residual functional capacity assessment. But Nelson withdraws that argument in her reply brief. *See* Dkt. 18, at 2.

Nelson does not address the ALJ's first basis for discounting Warren's opinion—Warren's failure to cite any objective evidence or medical basis in support of the limitations he found. Instead, Nelson challenges only the ALJ's second basis—the ALJ's conclusion that Warren's findings were inconsistent with the overall record. Nelson says that the standing, sitting, and working restrictions found by Warren were supported by Nelson's "long and extensive medical history including bilateral knee replacements," and by "Nelson's testimony on her need for work breaks, using 16 prescribed medications, [and her] limitations on physical activity." Dkt. 13, at 4. In other words, Nelson contends that the ALJ erred by: (1) ignoring objective record evidence that supported Warren's standing, sitting, and working restrictions; and by (2) discounting Nelson's own testimony about the extent of her limitations.

Nelson's first contention fails because she points to no specific objective evidence in the record that supports Warren's standing, sitting, and working limitations. Nelson simply says that she has an extensive medical history, including bilateral knee replacements and use of numerous prescription medications.[3] The ALJ acknowledged these aspects of Nelson's medical history, *see* R. 24 (noting Nelson's testimony that "she does take a large amount of medication, daily, for multiple impairments"); R. 28 (discussing the total replacement of Nelson's right knee in 2007), and deemed them consistent with the RFC she assessed. Nelson doesn't explain why her knee replacement and prescription medication use supported restrictions greater than those the ALJ found. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (to demonstrate that a RFC determination is not supported by substantial evidence, a plaintiff must identify evidence that justifies further restrictions).

---

[3] Contrary to the assertion in her brief, there is no evidence in the record that Nelson had bilateral knee replacements. Only Nelson's right knee was replaced. *See* R. 219; R. 267; R. 479.

Nelson's second contention—that the ALJ erred by discounting Nelson's own testimony about the extent of her standing, sitting, and working limitations—is a challenge to the ALJ's assessment of Nelson's credibility. Courts defer to ALJ assessments of claimant credibility unless they are "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). Here, the ALJ considered Nelson's testimony about her own limitations and concluded that "the degree of severity alleged lack[ed] support and consistency with the other evidence of record." R. 33. The ALJ noted, for instance, that Nelson had not received "the type of medical treatment during the period at issue that one would expect for the disabling symptoms and limitations alleged," and that Nelson's medical "[e]xam findings d[id] not support the level of inability to perform household chores the claimant testified to or that she needs to lie down or take breaks during the day as alleged." *Id.* Indeed, Nelson's treatment notes indicate that Nelson regularly told her doctors that she was "aggressively exercising and working on weight loss," R. 29, and that her pain was improving such that she "has been able to taper her pain medications." R. 30. Nelson doesn't explain why the reasons the ALJ relied on in declining to fully credit her testimony were patently wrong.

The ALJ's assessment of the medical record and of Nelson's credibility were supported by substantial evidence, so the court discerns no error with the ALJ's corollary conclusion that Warren's opinion was inconsistent with the overall record.

Nelson's only remaining argument is that that the ALJ erred by failing to explain her handling of Warren's opinion by reference to the regulatory factors set out in 20 C.F.R. § 404.1527(c), which instructs the ALJ to consider the length, nature, and extent of the treatment relationship; the supportability of the medical opinion and its consistency with the record as a whole; whether the medical source has a relevant specialty; and any other relevant

4

considerations. But the ALJ did not ignore these factors: most of her discussion of Warren's opinion concerned its supportability and consistency with the record as a whole. Nelson is correct that the ALJ did not mention Warren's specialty (orthopedics) or the length, nature, and extent of his relationship with Nelson (he has treated her since 2007). But Nelson doesn't explain why the ALJ's failure to discuss these factors matters. The ALJ discounted Warren's standing, sitting, and working restriction for reasons unrelated to Warren's specialty or the extent of his treatment relationship with Nelson. And Nelson cites no cases in which a court has deemed that an ALJ's failure to discuss each of the individual regulatory factors is a stand-alone basis for remand.

The court discerns no error in the ALJ's handling of Warren's opinion, so it will affirm the commissioner's decision.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered December 4, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge